**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| THE HILLMAN GROUP, INC., | ) <br> ) |
| Plaintiff, | ) <br> ) **C.A. No. 2:20-cv-00070** |
| v. | ) <br> ) **JURY TRIAL DEMANDED** |
| KEYME, LLC, | ) <br> ) |
| Defendant. | ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff The Hillman Group, Inc. ("Hillman"), files this complaint for patent infringement against Defendant KeyMe, LLC ("KeyMe") under 35 U.S.C. § 271. Hillman hereby alleges as follows:

**PARTIES**

1. Plaintiff Hillman is a corporation organized and existing under the laws of Delaware that maintains its principal place of business at 10590 Hamilton Avenue, Cincinnati, Ohio 45231.

2. Hillman is engaged in the business of providing a variety of products and services for the retail industry, with a focus on the hardware and home improvement businesses. Hillman's products include a variety of key duplication machines, including its FastKey, Minute Key, and KeyKrafter key duplication machines. Hillman deploys its key duplication machines in this judicial district and throughout the United States.

3. On information and belief, Defendant KeyMe is a limited liability company organized and existing under the laws of Delaware that maintains its principal place of business at 5 Penn Plaza, New York, New York 10001.

4. On information and belief, KeyMe provides self-service key duplication kiosks to the retail industry and regularly conducts business throughout the United States, including within this judicial district, by placing these kiosks in retail locations. On information and belief, KeyMe derives revenue from the sale of the keys duplicated in the KeyMe kiosks to consumers.

## JURISDICTION AND VENUE

5. Hillman realleges, and incorporates in full herein, each preceding paragraph.

6. This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, including 35 U.S.C. § 271, and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over KeyMe because, on information and belief, KeyMe purposely avails itself of the privilege of doing business in the Eastern District of Texas and/or derives substantial revenue from goods and services provided to individuals in this district, including via the deployment of KeyMe key duplication kiosks.

8. On information and belief, KeyMe has deployed approximately thirty of its infringing KeyMe kiosks in this judicial district. *See* **Exhibit B** at ¶ 15.

9. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and/or 1400(b) because, on information and belief, KeyMe has committed acts of patent infringement within the Eastern District of Texas and has multiple regular and established places of business in this district by way of its thirty or more key duplication kiosks in this district.

10.     More than one hundred Hillman FastKey, Minute Key, and KeyKrafter key duplication machines are deployed in the Eastern District of Texas.

11.     Hillman also maintains three manufacturing and distribution facilities located within the Eastern District of Texas, totaling more than 334,000 square feet of commercial real estate.

12.     Hillman operates a 165,705 square foot distribution facility at 514 Bennett Lane, Lewisville, Texas, within the Eastern District of Texas.  Hillman employs approximately 110 people at the Lewisville facility, which is Hillman's only U.S. distribution center located between Arizona and Ohio.

13.     Hillman has leased the Lewisville facility since December of 2017, and has a valid lease on the property through at least May of 2025.  More than two million products relating to Hillman's key duplication business touched the Lewisville facility in the twelve months ending in August, 2019, representing tens of millions of dollars in eventual sales.

14.      Hillman additionally maintains two facilities in Tyler, Texas, within the Eastern District of Texas.  Hillman operates a 105,259 square foot manufacturing, storage, and distribution facility located at 2329 East Commerce Street, Tyler, Texas 75702, and a 63,000 square foot office, manufacturing, storage, and distribution facility located at 6357 Reynolds Road, Tyler, Texas 75708.  Hillman has operated the two Tyler facilities since November of 2017, and has a valid lease on each property through at least November of 2022, with options to renew for at least ten additional years.  Hillman employs approximately 180 people combined at its two Tyler facilities.

## THE PATENTS-IN-SUIT

15.     Hillman realleges, and incorporates in full herein, each preceding paragraph.

16. The U.S. Patent and Trademark Office ("PTO") issued U.S. Patent No. 10,577,830 ("the '830 patent") at 12:00 AM Eastern Time on March 3, 2020, entitled "Identification Module for Key Making Machine." The '830 patent identifies Byron K. Grice, Phillip Gerlings, John C. Campbell, and Michael J. Schmidt as the inventors of the claimed subject matter. A true and correct copy of the Issue Notification issued by the PTO on February 12, 2020 for the '830 patent is attached hereto. *See* **Exhibit A** at 1.

17. Hillman is the owner of the '830 patent by virtue of assignment and has the right to enforce it.

## THE INFRINGING PRODUCTS

18. Hillman realleges, and incorporates in full herein, each preceding paragraph.

19. On information and belief, KeyMe markets a self-service key duplicating kiosk that it has introduced into interstate commerce under one or more trade names, including but not limited to the "KeyMe" or "Locksmith in a Box" kiosks (collectively, "the Infringing Products"). Attached to this Complaint as **Exhibit C** is a printout of a KeyMe website (https://blog.key.me/key-copying-kiosk-technology-update/; last visited February 28, 2020), showing examples of the Infringing Products.

20. On information and belief, KeyMe has marketed, sold, offered for sale, and/or provided the Infringing Products to various retailers throughout the United States and this judicial district, including but not limited to 7-Eleven, Bed Bath & Beyond, Menard's, Rite Aid, Albertson's, Kmart, Safeway, Sears, Mall of America, Giant Eagle, Ralphs, Kroger, Vons, and Tom Thumb, and is continuing to do so. Attached to this Complaint as **Exhibit D** is a printout of a KeyMe website (https://www.key.me; last visited February 28, 2020) instructing consumers to "find us at these fine retailers."

## KEYME'S INFRINGEMENT OF THE '830 PATENT

21. Hillman realleges, and incorporates in full herein, each preceding paragraph.

22. KeyMe, via the Infringing Products, has infringed, infringes, and will infringe multiple claims of the '830 patent, including at least claim 1.

23. The '830 patent is directed generally to "[a]n identification module . . . for use in a key making machine." *See, e.g.*, **Exhibit A** at 49, Abstract.

24. Claim 1 of the '830 patent recites:

> A key making machine, comprising:
>
> a housing;
>
> an identification system, wherein the identification system includes:
>
>> a slot opening in the housing configured to receive the shank of an existing first key;
>>
>> a transponder sensor configured to detect the presence of a transponder within an existing second key and to read a transponder code associated with the detected transponder; and
>>
>> an imaging system comprising one or more light sources and one or more cameras, wherein the imaging system is configured to use a single camera to determine at least a channel profile of each side of the shank of the existing first key without withdrawing and reintroducing the existing first key in the slot;
>
> a fabrication system, wherein the fabrication system is configured to:
>
>> receive a key blank that the identification system has determined to be associated with the existing first key based at least in part on the determined channel profile of each side of the existing first key; and
>>
>> cut a bitting pattern into the received key blank that matches the bitting pattern of the existing first key;
>
> a user interface associated with the housing,
>
>> wherein the user interface includes a touch screen, and

> wherein the user interface is configured to provide status information to a user regarding a key duplication process involving the existing first key; and

a credit card reader.

*Id.* at 11-12 (claim 1 allowed pursuant to Issue Notification and Notice of Allowance).

25. KeyMe has described the Infringing Products as "self-service key copying kiosks." *See* **Exhibit E** at 2 (website stating "Find our self-service key copying kiosks in retailers like Bed Bath & Beyond, Rite Aid and 7-Eleven"; https://blog.key.me/24-hour-locksmith-near-you/; last visited February 28, 2020).

26. On information and belief, the Infringing Products include a key-receiving entry (i.e., slot opening) in the kiosk housing configured to receive the shank of an existing key. *See* **Exhibit F** at 1 (snapshot of website showing a KeyMe kiosk with a key-receiving entry surrounded by the instruction "INSERT KEY"; https://key.me; last visited February 28, 2020); **Exhibit G** at 2 (same; https://blog.key.me/how-our-key-copying-machines-learn/; last visited February 28, 2020). On information and belief, the key-receiving entry is configured to receive the shank of an existing key. *See* **Exhibit H** (U.S. Patent No. 8,682,468 from KeyMe) at col. 11, lines 48-52 ("The key scanning slot can allow a user to maintain contact with the handle of the key at all times in some embodiments. The key scanning slot can permit the key to remain attached to a keychain (or key ring, or any other key retention device) during key scanning.")

27. On information and belief, the Infringing Products include a transponder sensor configured to detect the presence of a transponder within an existing second key and to read a transponder code associated with the detected transponder. *See* **Exhibit C** at 2 ("Our older key copying kiosks could support a large number of car keys, however they weren't able to copy the more advanced keyless 'fob' keys found on more modern cars. Our new kiosks can copy

significantly more car keys than ever before, and can copy these Fob keys as well, for a fraction of the cost of a dealership"); **Exhibit I** at 1 ("We have officially launched our next generation 'locksmith in a box' key duplication kiosk!  These next generation kiosks are able to copy car keys, both with transponder chips and those without." (https://blog.key.me/our-new-locksmith-in-a-box-next-generation-kiosk/; last visited February 28, 2020)); **Exhibit J** at 1 (February 27, 2018 KeyMe press release stating "The user can then create a 'digital key chain' in the app with any of his or her keys, which is stored on the cloud-based server in case a key is ever lost and needs to be printed, . . . ."; "Once such a key is inserted into the kiosk, the transponder data is captured and stored along with the key's shape . . ."; 
https://www.rfidjournal.com/articles/view?17242/; last visited February 28, 2020); **Exhibit K** at 1 (October 27, 2014 KeyMe press release stating "The new kiosks will be able to copy car keys, both with transponder chips and those without"; https://www.twice.com/the-wire/keyme-rolls-out-next-generation-kiosks-new-functionality-including-car-keys-and-expands-retail-footprint-54570; last visited February 28, 2020); **Exhibit L** at 1 (October 26, 2016 KeyMe press release stating "The customer places their current fob against the key slot, allowing the secure transfer of the transponder ID.  KeyMe will code a new transponder, cut a new blade and ship it to the customer via complementary priority mail with a tracking code."; 
https://www.kioskmarketplace.com/news/keyme-kiosks-copy-car-key-fobs-and-save-digital-copies-in-the-cloud/; last visited February 28, 2020).

28.  KeyMe described the transponder sensors associated with its kiosks in a patent application filed on July 6, 2015 which later issued as U.S. Patent No. 9,563,885 ("'885 patent"). *See generally* **Exhibit M.**  Figure 13 of the '885 patent depicts a schematic of a key duplication kiosk including a "transponder antenna":



*Id.* at 16 (FIG. 13); *see also id.* at col. 16, ll. 26-31 ("As shown in FIG. 13, in some embodiments, kiosk 200 can include a transponder antenna 1302 that can be coupled to hardware processor 110. In such embodiments, transponder antenna 1302 can be used to send and/or receive signals from a transponder chip 1304 included in a transponder key 1306."); col. 22, ll. 38-44 ("As another example, process 1800 can use transponder antenna 1302 and/or any other suitable device or combination of devices to automatically detect the presence of a transponder key (e.g., a transponder key inserted in slot 1404, a transponder key held near transponder antenna 1302, etc.) using any suitable technique or combination of techniques."); col. 24, ll. 1-6 ("Process 1800 can then use a sensor (e.g., such as detectors 106) and information known about the geometry of the transponder key and the location of the transponder chip relative to a reference point that has a known position to determine whether the transponder chip is within the maximum range.").

29.     On information and belief, the Infringing Products include an imaging system comprising one or more light sources and one or more cameras.  *See* **Exhibit F** at 2 ("Instead of trace-cutting your keys like some other guys, KeyMe uses 3D imaging and predictive algorithms,

creating a perfect image of your key."); **Exhibit G** at 1 ("Our computer vision technology allows the kiosk to scan and recognize your key using multiple cameras in a process very similar to how facial recognition technology identifies a person based on a digital image."); **Exhibit N** at 2 (news article stating "The [KeyMe] kiosks, equipped with sophisticated robotics systems and multiple internal cameras, as well as frequency detectors for RFID and car-key frequencies, are manufactured in Rochester, Minnesota."; https://www.inc.com/christine-lagorio/keyme-new-ad-campaign.html; last visited February 28, 2020).

30. KeyMe described its identification technology in a patent application filed on January 4, 2013 which later issued as U.S. Patent No. 8,682,468 ("'468 patent"). *See generally* **Exhibit O.** Figure 4A of the '468 patent demonstrates using an imaging system comprising one or more light sources and one or more cameras:



*Id.* at 6 (FIG. 4A); *see also id.* at 8 (FIGs. 5-6).

31. On information and belief, the imaging system of the Infringing Products is configured to use a single camera to determine at least a channel profile of each side of the shank of the existing key. *See id.* at col. 13, ll. 16-19 ("a key can be scanned using any optical detector,

scanner, camera, mobile phone, smart phone, tablet computer, etc."). Figure 5 of KeyMe's '468 patent demonstrates measuring a bitting pattern of an existing key:



*Id.* at 8. Further, Figure 6 of the KeyMe '468 patent illustrates KeyMe's use of a cross-sectional profile, i.e. a channel profile, of an existing key:



*Id.* (FIG. 6); *see also id.* at col. 4, ll. 12-21:

> More generally, key detector 106 can detect geometric information about a key. For example, key detector 106 can detect the dimensions of a key (e.g., length, width, height, profile, shoulder shape, etc.) and features of the key. Examples of features of the key can include, but are not limited to, a bitting pattern, protuberances, dimples, voids, grooves, a milling profile, a milling pattern of the key from one or more side views, a milling pattern of the key from a front view (e.g., looking from the tip of the key toward the head of the key), etc.

*See also id.* at col. 8, ll. 58-60 ("This key scanning can detect the key bitting pattern and/or the key blank type in some embodiments.").

32.  On information and belief, the imaging system of the Infringing Products is configured to determine at least a channel profile without withdrawing and reintroducing the existing key in the slot. *See id.* at col. 11, ll. 62-64 ("Once in the slot, one or more imaging devices 406 and 408 can be used to optically detect a bitting pattern and a key blank type of the key in some embodiments."); col. 11, ll. 44-46 ("The key scanning slot can properly position the key to ensure the scanning process is successful.").

33.  On information and belief, the Infringing Products contain a fabrication system configured to receive a key blank that the identification system has determined to be associated with the existing key based at least in part on the determined channel profile. The Infringing Products must contain a storage magazine for key blanks within the kiosk housing, because the Infringing Products do not require the user to insert a key blank from outside the kiosk housing in order to duplicate a key at the kiosk. *See* **Exhibit C** at 1 (describing how at least some of the Infringing Products "autonomously set itself up and start cutting keys without human involvement."). Figure 12 of the KeyMe '468 patent depicts KeyMe's use of the channel profile to assist its machines in detecting and retrieving a key blank whose cross-sectional profile matches that of the master key:



**Exhibit O** at 15 (FIG. 12); *see also id.* at col. 6, ll. 31-37 ("In some embodiments, each magazine can contain an inventory of multiple key types so that the number of magazines does not restrict the number of key types which can be accommodated in a kiosk. An illustrative example is shown in FIG. 12. In this embodiment, a key type detection method (e.g., optical imaging), can be used to identify the location of a given blank type within a magazine.").

34. On information and belief, this subject matter disclosed in KeyMe's patent application is embodied within the Infringing Products, and the channel profile detecting features described in the patent application are available for use as part of the key identification and duplication process. KeyMe has represented in press releases that its key duplication kiosks contain its patented key identification technology. *See* **Exhibit P** at 1 (April 15, 2014 KeyMe press release stating "Through KeyMe's patented technology, customers can scan keys with their smartphone and receive perfect duplicates in the mail.";

http://www.prweb.com/releases/2014/04/prweb11764747.htm/; last visited February 29, 2020); **Exhibit Q** at 1 (May 2, 2018 KeyMe press release stating "KeyMe kiosks employ a sophisticated and patented combination of artificial intelligence, computer vision, and robotics, which safely and effectively eliminate human error in the key duplication process."; https://www.prnewswire.com/news-releases/keyme-advances-national-expansion-of-key-duplication-services-300641032.html; last visited February 29, 2020).

35. On information and belief, the Infringing Products contain a fabrication system configured to cut a bitting pattern into the received key blank matching the bitting pattern of the existing key. *See* **Exhibit G** at 1 ("Based on preset algorithms, our key duplication kiosk (http://www.key.me/kiosk) then generates a 3D image of the key's teeth."); **Exhibit R** at 1 ("If you're locked out, all you need to do is locate the nearest KeyMe locksmith in a box and cut a duplicate key. Our kiosks are equipped to print most common key types in just a few seconds. You can use the KeyMe app to locate the closest kiosk and cut a replica using only your fingerprint."; https://blog.key.me/locksmith-in-a-box-protects-you-from-lockouts/; last visited February 29, 2020); *see also* **Exhibit C** at 1 (describing how at least some of the Infringing Products "autonomously set itself up and start cutting keys without human involvement.").

36. On information and belief, the Infringing Products include a user interface associated with the kiosk housing and includes a touch screen. KeyMe has encouraged customers on its website to "try out KeyMe's touchscreen today!" *See* **Exhibit S** at 3 (https://blog.key.me/how-will-the-touchscreen-evolve-in-2017/; last visited February 29, 2020); *see* **Exhibit T** (photograph of a user interface touch screen of a KeyMe kiosk taken at a Safeway store in Leesburg, Virginia on August 29, 2019).

37. On information and belief, the user interface of the Infringing Products is configured to provide status information to a user regarding a key duplication process involving the existing key. *See id.* (photograph of a user interface of a KeyMe kiosk taken at a Safeway store in Leesburg, Virginia on August 29, 2019 during a key duplication process, wherein the user interface touch screen displays a message stating that the system was "analyzing + examing [sic] all details.").

38. On information and belief, the Infringing Products include a credit card reader. *See, e.g.,* **Exhibit C** at 2 (printout of KeyMe website showing Infringing Products featuring a credit card reader); **Exhibit E** at 2 (figure of a KeyMe kiosk featuring a credit card reader); **Exhibit F** at 3 ("KeyMe does not accept cash. All transactions are verified with a credit card.").

39. On information and belief, the Infringing Products therefore meet each and every limitation of at least claim 1 of the '830 patent.

## COUNT I
### (Infringement of U.S. Patent No. 10,577,830)

40. Hillman realleges, and incorporates in full herein, each preceding paragraph.

41. KeyMe, alone or through its agents and/or intermediaries, directly infringes at least one claim of the '830 patent either literally or under the doctrine of equivalents, by manufacturing, using, offering to sell, selling, and/or providing products and/or services that infringe the '830 patent in the United States, including the Infringing Products.

42. As such, KeyMe is infringing and will infringe the '830 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

43. Hillman is damaged, in an amount yet to be determined, by KeyMe's acts of infringement and will continue to be damaged by such acts in the future.

44.     Hillman seeks damages in an amount adequate to compensate Hillman for KeyMe's infringement and a permanent injunction barring KeyMe from further infringement of the '830 patent.

### DEMAND FOR TRIAL BY JURY

45.     Hillman demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Hillman respectfully requests the following relief from this Court:

A.     That the Court adjudge and decree that KeyMe is infringing one or more claims of the '830 patent, either literally or under the doctrine of equivalents;

B.     That the Court enter a permanent injunction pursuant to 35 U.S.C. § 283 enjoining KeyMe, its officers, employees, agents, and all others acting in active concert or participation with them from further acts that infringe the '830 patent;

C.     That the Court determine the amount of damages pursuant to 35 U.S.C. § 284 that are adequate to compensate Hillman for KeyMe's continuing and future infringement of the '830 patent, and enter judgment for Hillman in the amount of its damages, plus interest and the cost of this action pursuant to 28 U.S.C. § 1920;

D.     That the Court award Hillman enhanced damages under 35 U.S.C. § 284 for KeyMe's willful infringement of the '830 patent;

E.     That the Court enter an order that this case be adjudged and decreed exceptional pursuant to 35 U.S.C. § 285, and that Hillman be awarded its reasonable attorneys' fees; and

F.     That the Court award Hillman any further and additional relief as it deems just and proper.

| | |
|---|---|
| DATED: March 2, 2020 | FINDLAY CRAFT, P.C. |
| | |
| | /s/ *Eric H. Findlay* |
| | Eric H. Findlay (Bar No. 00789886) |
| | 102 North College Avenue, Suite 900 |
| | Tyler, TX 75702 |
| | (903) 534-1100 |
| | (903) 534-1137 (fax) |
| | efindlay@findlaycraft.com |
| | |
| | *Attorney for Plaintiff* |
| | *The Hillman Group, Inc.* |

*Of Counsel:*

Christopher P. Isaac (*pro hac vice* pending)
Ryan P. O'Quinn (*pro hac vice* pending)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA 20190
(571) 203-2700
(202) 208-4400 (fax)
chris.isaac@finnegan.com
oquinnr@finnegan.com

Gerald F. Ivey (*pro hac vice* pending)
John Williamson (*pro hac vice* pending)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000
(202) 408-4400 (fax)
gerald.ivey@finnegan.com
john.williamson@finnegan.com